Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 4117 | **DATE** | 12/17/2002 |
| **CASE TITLE** | BRAHOS, ET AL vs. BROWN, ET AL | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] **Motion (34-1) for summary judgment is denied. Motion (40-1) for summary judgment is granted. Motion (61-1) to strike is denied as moot.**

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | DEC 20 2002 date docketed | |
| | Notified counsel by telephone. | | | |
| ✓ | Docketing to mail notices. | | | 71 |
| ✓ | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| DW | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice mailing deputy initials | |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| GEORGIA BRAHOS, ELIZABETH DIAZ, and SHEILA FAHEY-WALLENIUS,<br><br>Plaintiffs,<br><br>v.<br><br>DOROTHY BROWN, Clerk of the Circuit Court of Cook County in her individual capacity and in her official capacity for injunctive relief purposes, SQUIRE LANCE, GAIL LUTZ, and THE OFFICE OF THE CLERK OF THE CIRCUIT COURT OF COOK COUNTY,<br><br>Defendants. | No. 01 C 4117<br>Judge James B. Zagel |



DOCKETED DEC 2 0 2002

## MEMORANDUM OPINION AND ORDER

Sheila Fahey-Wallenius, Georgia Brahos, and Elizabeth Diaz, all former employees of the Office of the Clerk of the Circuit Court of Cook County, have sued their former employer, current Clerk Dorothy Brown, and two of her current employees, Squire Lance and Gail Lutz, under 42 U.S.C. § 1983 for politically motivated termination in violation of the First Amendment and for terminating them without cause and without an opportunity to be heard in violation of the Due Process Clause. Plaintiffs and defendants Brown, Lance, and Lutz have cross-moved for summary judgment, and defendants have additionally moved to strike certain affidavits submitted by the plaintiffs in support of their motion for summary judgment.

For the purposes of summary judgment, I assume the following is true. Each plaintiff began working in the Clerk's office under the prior Republican Clerk Aurelia Pucinski. At some point during their employment, each held "exempt non-career service" positions, which were

considered "at will" or politically exempt, but prior to the end of Clerk Pucinski's administration each had been formally transferred into and was working in a "career service" position that was not subject to political termination. Shortly after assuming office, Clerk Brown, the newly-elected Democrat, terminated the plaintiffs. Lance allegedly told Fahey-Wallenius that her termination was "purely political" and that he thought she was a Republican. He also told Worth Township Democratic Committeeman John McNamara that Fahey-Wallenius' termination was for political reasons and not based on her performance and that Clerk Brown thought Fahey-Wallenius was a Republican. Diaz's termination form lists the reason for her discharge as "new administration." According to Lance, Clerk Brown terminated Brahos for the same reason she terminated the others - because she "needed the job."

Summary Judgment

Summary judgment is appropriate if, after drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Juarez v. Ameritech Mobile Communications, Inc.*, 957 F.2d 317, 320 (7th Cir. 1992). The question is thus "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). On cross motions for summary judgment, each movant must individually satisfy the requirements of Rule 56. *Proviso Ass'n of Retarded Citizens v. Village of Westchester*, 914 F. Supp. 1555, 1560 (N.D. Ill. 1996).

Defendants Lance and Lutz

Defendants Lance and Lutz argue that they are entitled to summary judgment because plaintiffs have not and cannot establish their personal involvement in the alleged wrongdoing. In order to state a claim for individual liability under § 1983, a plaintiff must establish that the defendant was personally responsible for the alleged deprivation of a constitutional right. *Rascon v. Hardiman*, 803 F.2d 269, 273-74 (7th Cir. 1986). To establish personal responsibility, the plaintiff must demonstrate some affirmative link between the conduct complained of and the official being sued. *Smith v. Rowe*, 761 F.2d 360, 369 (7th Cir. 1985). Only personal knowledge which rises to the level of criminal recklessness or individual participation and involvement by the defendant in the allegedly unconstitutional conduct, is sufficient to impose liability under § 1983 on a supervisor or official. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1523 (7th Cir. 1990).

The evidence here shows that Lance and Lutz were not personally involved in the decision to terminate plaintiffs. In her deposition, Clerk Brown specifically stated that the decision to terminate plaintiffs was hers alone. The only evidence plaintiffs put forth for Lance and Lutz's personal involvement is that they attended the termination meetings with the plaintiffs and assisted in assembling, at the direction of Clerk Brown, a list of positions which could be considered exempt based on specific parameters provided to them by Clerk Brown. This is not enough to demonstrate individual liability under § 1983 for an alleged politically motivated termination case. It is irrelevant that they had close working relationships with Clerk Brown, that they worked on her campaign, that she may have confided in them regarding any political motivation for the plaintiffs' terminations, or that they may have relayed to others the political

3

motivations for the terminations. Therefore, summary judgment for Lance and Lutz on both counts is appropriate. *See Stagman v. Ryan*, No. 96 C 8012, 1998 WL 142388 (N.D. Ill. March 28, 1998) (granting defendants' motion for summary judgment in part because defendants were not personally involved in decision to terminate plaintiffs). I now turn to the remaining claims existing solely against Clerk Brown.

Count I: First Amendment

In Count I, plaintiffs allege that defendants' politically motivated terminations violated plaintiffs' First Amendment rights. Among other arguments, defendants argue that plaintiffs have failed to establish a *prima facie* case of politically motivated termination and that therefore summary judgment is appropriate as a matter of law. In order to establish a *prima facie* case, a plaintiff must prove by a preponderance of the evidence that: (1) the conduct was constitutionally protected; and (2) if so, that the constitutionally protected conduct was a substantial factor in the decision to terminate. *See, e.g., Simmons v. Chicago Bd. of Educ.*, 289 F.3d 488, 495 (7th Cir. 2002); *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977). Under well-established law, a plaintiff must, as a threshold matter, establish by a preponderance of the evidence that he, in fact, engaged in political activities and/or had a particular political affiliation. *Simmons*, 289 F.2d at 495; *Radford v. Chicago Housing Authority*, No. 83 C 8738, 1985 WL 692, at *2 (N.D. Ill. April 16, 1985). In *Radford*, the court granted summary judgment in favor of the defendant against the plaintiff's political termination claim where the plaintiff had engaged in no real political activities. The plaintiff's only evidence of political affiliation was his impression that he was politically affiliated with the prior Mayor Jane Byrne because he had been

4

employed by a political appointee of hers. *Id.* The court found that this evidence was self-serving and was, "at best, barely sufficient to start the constitutional protections into play." *Id.* The court then also found that there was no independent evidence which would lead anyone to conclude that the plaintiff was terminated for his "political affiliation." *Id.*

Defendants first argue that the plaintiffs have failed to demonstrate that the plaintiffs were engaged in constitutionally protected activity. Here, I must examine each plaintiff individually to see if they have indeed failed to do so. First, Brahos and Diaz clearly fail to do so. The only basis for their claim of political affiliation is that they were hired by the previous clerk, Aurelia Pucinski, and remained employees and supporters of Clerk Pucinski. This fact alone is insufficient to demonstrate protected political affiliation or activity. This is how this case is different from the situation in *Gannon v. Daley*, 561 F. Supp. 1377 (N.D. Ill. 1983). In *Gannon*, each of the five individuals was affiliated with the Republican party and was active in the 1980 re-election campaign of incumbent Cook County State's Attorney Bernard Carey, who lost the election to defendant Richard M. Daley, a Democrat. As such, Brahos and Diaz fail to establish *prima facie* case of a politically motivated termination and therefore summary judgment is appropriate on Brahos and Diaz's claims for politically motivated termination.

Fahey-Wallenius presents a stronger case. When Worth Township Democratic Committeeman John McNamara contacted Lance to inquire as to the reasons for Fahey-Wallenius being terminated, Lance told him that her termination had nothing to do with performance but was due to the Clerk's thought that she was a Republican. Therefore, Fahey-Wallenius may have engaged in the constitutionally protected activity of being Republican. The problem is that, as in *Radford*, this is merely an impression that an employee has a certain

5

political affiliation.[1] The difference between this case and *Radford*, however, is that the allegation of political affiliation here has been made by a third party, rather than by the plaintiff herself. And if the impression of political affiliation in Radford was "at best, barely sufficient to start the constitutional protections into play," then the impression here relayed by a third party is certainly sufficient. *Id.*

Fahey-Wallenius satisfies, but just "barely," the first step in establishing a *prima facie* case, but she still must produce direct evidence establishing that her political affiliation and/or political "activities" were a motivating factor in her termination. *Nelms v. Modisett*, 153 F.3d 815, 819 (7th Cir. 1998). Sufficient direct evidence must involve, at the very least, letters, statements or communications of some form referring to the plaintiff in terms of politics, or pattern of decisions based on political factors. *See Simmons*, 289 F.3d at 495-96; *Nelms*, 153 F.3d at 818; *McMillian v. Svetanoff*, 878 F.2d 186, 190 (7th Cir. 1989); *Conroy v. City of Chicago*, 708 F. Supp. 927, 940-41 (N.D. Ill. 1989); *Radford*, 1985 WL 692, at *2. Perhaps the most relevant case pertaining to this inquiry is *Nelms* where the plaintiff, a field investigator with the Consumer Protection Division of the Attorney General's office, was terminated when a new Democratic Attorney General took office. After the termination, the office did not replace him and his caseload was assumed by others in the office. *Nelms*, 153 F.3d at 817. The plaintiff filed suit alleging that his termination was politically motivated because he ran for political office as a Republican the year before and that there were several comments made to him indicating that his termination was politically motivated. *Id.* at 817-18. Upholding the district court's grant of

---

[1] In fact, Fahey-Wallenius concedes, to the contrary, that she was a member of McNamara's Democratic Organization, thus implying that she herself is a Democrat.

6

summary judgment in favor of the defendants, the court of appeals found that even if the plaintiff could establish defendants' knowledge of plaintiff's political affiliation, his claim failed because he presented no evidence to support a determination that the decision to terminate him was politically motivated. *Id.* The court held that a plaintiff cannot rely on speculation or the opinions of non-decision makers or his own subjective beliefs as evidence that he was fired because of his constitutionally protected conduct. *Id.* at 819.

Similarly, Fahey-Wallenius has presented no evidence to support a determination that Clerk Brown's decision to terminate her was politically motivated.[2] Allegations that Fahey-Wallenius worked for and supported Republican Clerk Pucinski, that she belonged to a different

---

[2] I must clarify the term "politically motivated." The seminal cases of *Elrod v. Burns*, 427 U.S. 347 (2976), *Branti v. Finkel*, 445 U.S. 507 (1980), and *Rutan v. Republican Party of Illinois*, 497 U.S. 62 (1990), established the fundamental principle that the First Amendment forbids government officials from taking adverse employment actions against public employees solely for not being supporters of the political party in power; essentially a prohibition against retaliation based on partisan political views or activities. Nonetheless, this principle is not absolute. A government official may "may meet its need for politically loyal employees to implement its policies by . . . dismissing, on political grounds . . . those employees in policymaking positions." *Rutan*, 497 U.S. at 70. Here, no evidence exists that Clerk Brown dismissed plaintiffs because of any direct animus based on their political activities or affiliations. In other words, there is no evidence that Clerk Brown retaliated against them. Contrary to this assertion, the various reasons put forth for Clerk Brown's dismissals – that she didn't want people who were close to Clerk Pucinski or would not be loyal to her, that she wanted to select "her own management staff," that she hired former campaign workers, that she wanted to put "her own person in," and that she "needed the jobs" – are all entirely consistent with the exception for allowing government officials to terminate policymakers for political reasons. In this case, the "political" nature of the terminations has nothing to do with the partisan political activities of the plaintiffs but entirely to do with the need for Clerk Brown to chart her administration's course in terms of selecting a staff on whom she could rely to work on her policy and administrative objectives. In the simplest of terms, it is constitutional for her to fire certain employees for the sheer "political" reason that she believes that others will be better for her administration. Even if this is "the very essence of political patronage at its worst" as plaintiffs charge, it is not unconstitutional.

political party than Clerk Brown, that she favored Clerk Brown's opponent in the election are all irrelevant and unavailing without direct evidence that Clerk Brown was actually motivated by Fahey-Wallenius' alleged constitutionally protected activity in terminating her. *See, e.g., Simmons*, 289 F.3d at 495; *Nelms*, 153 F.3d at 818; *McMillian*, 878 F.2d at 191. Fahey-Wallenius presents only two allegations that arguably draw a connection between her political affiliation and her termination: Lance telling Democratic Committeeman McNamara that Fahey-Wallenius' termination had nothing to do with performance and that the Clerk thought she was a Republican and Lance telling Fahey-Wallenius herself that her termination was purely political, that she had done nothing wrong, and that he thought she was a Republican. Neither of these conversations support a politically motivated termination claim, however, because, as in *Nelms*, they are merely the speculations, opinions, or subjective beliefs of Lance, who was not the decision-maker regarding Fahey-Wallenius' termination. In sum, Fahey-Wallenius offers no reliable or relevant evidence that Clerk Brown was aware of her political affiliation, much less that she was motivated to terminate her based on this affiliation. As such, summary judgment in favor of Clerk Brown is appropriate on Count I.[3]

Count II: Due Process

In Count II, plaintiffs allege that defendants' decision to terminate plaintiffs without cause and without providing notice and an opportunity to be heard violated plaintiffs' due

---

[3] Because I grant summary judgment on Count I on the basis of each plaintiff's failure to establish a *prima facie* case for politically motivated termination, it is unnecessary to consider the alternative arguments that the plaintiffs all held exempt non-career service positions thus allowing Clerk Brown to consider their political affiliation in their termination or that Clerk Brown is entitled to qualified immunity.

8

process rights. Among other arguments, defendants argue that the doctrine of qualified immunity bars this claim. The doctrine of qualified immunity provides that "government officials performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Baxter by Baxter v. Vigo County School Corp.*, 26 F.3d 728, 737 (7th Cir. 1994) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In order to defeat a claim of qualified immunity, plaintiffs must allege a cognizable violation of a constitutional right clearly established at the time of the alleged misconduct. *Marshall v. Allen*, 984 F.2d 787, 793-93 (7th Cir. 1993). Plaintiff "bears the burden of establishing the existence of the allegedly clearly established constitutional right." *Rakovich v. Wade*, 850 F.2d 1180, 1209 (7th Cir. 1988). Clearly established rights are those which are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "[U]ntil a particular constitutional right has been stated so that reasonably competent officers would agree on its application to a given set of facts, it has not been clearly established." *Henderson v. DeRobertis*, 940 F.2d 1055, 1059 (7th Cir. 1991).

In *McGrath v. Gillis*, 44 F.3d 567, 568 (7th Cir. 1995), for example, a terminated assistant State's Attorney brought an action against the ex-first assistant State's Attorney and a former assistant State's Attorney alleging, in part, deprivation of a property interest in continued employment without due process of law. The defendants argued that the plaintiff was not covered by the Cook County Rules, which purportedly created a property interest. *Id.* at 570-71. Plaintiff, on the other hand, argued that he was a Cook County employee covered by the applicable rules which created a property interest. *Id.* at 571-72. The Seventh Circuit held that

9

the plaintiff did not meet his burden of clearly establishing that he had a property interest in continued employment and that defendants were entitled to qualified immunity:

> At best, the plaintiff's evidence no more than raises a question as to whether Assistant State's Attorneys are county or state employees. We find that under Illinois law as interpreted by the state and this circuit, the plaintiff has not met his burden to "clearly establish" that he was a Cook County employee protected by Cook County Rules.

*Id.* at 572.

Here, at least some of the applicable law is clearly established.[4] But although plaintiffs are correct that the law has been clear since at least 1972 that public employees who have a legitimate expectation of continued employment have a property interest in their jobs which cannot be taken away without notice and an opportunity to be heard, a review of relevant case law here demonstrates that plaintiffs cannot prove that the law was so sufficiently clear that a reasonable official in Clerk Brown's position would understand that the plaintiffs here had a property right in terms of their employment with the Clerk's office being "for cause" as opposed to "at will" and were therefore entitled to due process upon termination. First, the Handbook arguably disclaimed the creation of contractual rights to "for cause" termination. *See Moore v. Illinois Bell Tel. Co.*, 515 N.E.2d 112 (Ill. App. Ct. 1987) (employee plan did not create an enforceable contract where plan described itself as statement of management's intent and not as contract or assurance of compensation); *see also Milazzo v. O'Connell*, 925 F. Supp. 1331, 1338

---

[4] As a prerequisite to establishing a due process violation, plaintiffs must first establish a property right in their respective jobs. *Wolf v. Larson*, 897 F.2d 1409, 1411 (7th Cir. 1990). To establish a property right for purposes of the Fourteenth Amendment, plaintiffs must point to "a specific ordinance, State law, contract or understanding" limiting the ability of the employer to discharge an employee. *See Krecek v. Board of Police Com'rs of La Grange Park*, 646 N.E.2d 1314, 1318-19 (Ill. App. Ct. 1995). Absent such a limitation, employment is "at will," which under the law does not give rise to a property interest protected under the due process clause. *Campbell v. City of Champaign*, 940 F.2d 1111, 1112 (7th Cir. 1991).

(N.D. Ill. 1996), *aff'd*, 108 F.3d 129 (7th Cir. 1997). In addition, the fact that the Handbook contains disciplinary procedures does not necessarily mean that plaintiffs had a property interest in their jobs. *See Campbell v. City of Champaign*, 940 F.2d 1111, 1113 (7th Cir. 1991) (right to disciplinary procedures does not create property right under due process clause); *see also Bishop v. Wood*, 426 U.S. 341, 347 (1976) (no property interest where "employee is merely given certain procedural rights"). Finally, the past custom and practice of Clerk Pucinski's office that career service employees would only be terminated "for cause" and that they were entitled to certain procedural rights prior to being discharged arguably had no effect in establishing a "for cause" termination requirement for the specific plaintiffs here. *See Billish v. City of Chicago*, No. 87 C 8731, 1988 WL 130003, at *5 (N.D. Ill. 1988) (employer's past practice and custom alone may not be sufficient to create protectable property interest), *rev'd on different grounds*, 989 F.2d 890 (7th Cir. 1993). Accordingly, it was not sufficiently clear that a reasonable official would understand that terminating plaintiffs without cause and not providing them with a pre or post-termination hearing would violate their constitutional right to due process.[5] Clerk Brown is therefore entitled to qualified immunity on Count II and summary judgment is appropriate.[6]

---

[5] Further, even if the law is clearly established, an official is afforded the protection of qualified immunity if at the time of the challenged actions his belief that his actions were lawful is "objectively legally reasonable." *Anderson*, 483 U.S. at 641. Here, nothing in the record contradicts any conclusion other than one that Clerk Brown's belief that her actions were lawful was objectively legally reasonable.

[6] Because I grant summary judgment on the basis of qualified immunity, it is unnecessary to consider defendants' arguments that they are also entitled to summary judgment because plaintiffs could be properly terminated based on their political affiliation, they do not have any property interest in their employment, and they have not demonstrated inadequate state remedies.

For the reasons above, Defendants' Motion for Summary Judgment is GRANTED, Plaintiffs' Motion for Summary Judgment is DENIED, and Defendants' Motion to Strike Affidavits in Support of Plaintiffs' Motion for Summary Judgment is DENIED as moot.

ENTER:

_____
James B. Zagel
United States District Judge

DATE: 17 Dec 2002